# Richmond

## COMMONWEALTH OF VIRGINIA v. E. GRIFFITH DODSON, CLERK OF THE HOUSE OF DELEGATES, ETC.

October 14, 1940.

Record No. 2310.

Present, All the Justices.

The opinion states the case.

*Abram P. Staples, Attorney-General, Joseph L. Kelly, Jr., Assistant Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the petitioner.

*Tazewell Taylor, C. O'Conor Goolrick, Frank W. Rogers* and *Leon M. Bazile,* for the respondent.

HOLT, J., delivered the opinion of the court.

At the 1940 Session of the General Assembly there was passed an appropriation bill covering the fiscal years ending June 30, 1941, and June 30, 1942, respectively. The title reads:

"An Act to appropriate the public revenue for the two years ending respectively on the thirtieth day of June, 1941,

and the thirtieth day of June, 1942, to prescribe the provisos, terms, conditions and provisions with respect to the items of appropriation, and their payment, and to repeal all acts wholly in conflict with this act, and all parts of all acts inconsistent with this act to the extent of such inconsistency."

This undisputed statement is taken from respondent's brief: The General Assembly passed the appropriation act, which has been printed as Chapter 425 of the Acts of 1940. This bill was submitted to the Governor on March 23, 1940, on or about the hour at which the General Assembly for 1940 adjourned *sine die*. The Governor was, therefore, afforded no opportunity to return the bill to the House in which it originated with his objections thereto. The Governor, after examination of the bill, reaching the conclusion that seven certain items thereof were in violation of section 52 of the Constitution, proceeded to veto them and, after having done so, approved the remainder of the bill. These items are set forth in full in the petition and designated as Veto No. 1, Veto No. 2, Veto No. 3, Veto No. 4, Veto No. 5, Veto No. 6, and Veto No. 7. Other defenses are urged, and it is also contended that certain items vetoed are "items" which the Governor is given power to disapprove by a provision in section 76 of our Constitution.

All this the petitioner, the Commonwealth, at the relation of its Attorney General, has challenged. The time, manner and form of these vetoes is not questioned.

First we are to determine the power given to the Governor by this excerpt from our Constitution, said section 76, which declares that "the governor shall have power to veto any particular item or items of an appropriation bill, but the veto shall not affect the item or items to which he does not object."

We are dealing with an appropriation bill. The Governor is given power to veto any item or items thereof, subject to this limitation noted: " * * * but the veto shall not affect the item or items to which he does not object."

■ If he were given power to veto an item without more, plainly such a veto would not affect an appropriation bill otherwise unconditionally approved. This limitation cuts down the items which may be vetoed but does not change or qualify its effect. The bill with an unconditional approval, together with valid vetoes, becomes a valid statute. The effect of vetoes not authorized will be considered later.

■ This illustration serves to show the application of this limitation and its wisdom:

If the Commonwealth were to determine to erect a library building and were to set apart a certain sum for structural steel, another for a heating plant, etc., and were finally to provide for a supervising architect at a stated salary, plainly the Governor could not, by veto, dispense with the services of an architect, although the sum to be paid for his services might, in a limited sense, be regarded as an item. That term, as used in the Constitution, refers to something which may be taken out of a bill without affecting its other purposes or provisions. It is something which can be lifted bodily from it rather than cut out. No damage can be done to the surrounding legislative tissue, nor should any scar tissue result therefrom.

What does "item" mean? It has been defined in *Juan Bengzon* v. *Secretary of Justice & Insular Auditor*, 299 U. S. 410, 57 S. Ct. 252, 253, 81 L. Ed. 312, 313.

The Phillipine Retirement Gratuity Law provided for the payment of a retirement gratuity to certain officers of the insular government, including justices of the peace, among whom was the petitioner. This was to be paid out of any fund in the insular treasury not otherwise appropriated. That act was approved by the Governor-General, who, however, vetoed this provision:

"The Justices of the Peace who must relinquish office during the year nineteen hundred and thirty-three in accordance with the provisions of Act Numbered Thirty-eight hundred and ninety-nine, shall also be entitled to the gratuities provided for in this Act."

The Organic Act conferred upon the Governor-General ordinary veto powers, but in it was this provision:

"The Governor-General shall have the power to veto any particular item or items of an appropriation bill, but the veto shall not affect the item or items to which he does not object." 48 U. S. C. A., section 1052.

The language of our Constitution, as we have seen, is that the "veto shall not affect the item or items to which he does not object." Indeed, one provision seems to have been copied from the other.

The court itself tells us what it had to decide: "Did the bill which became Act 4051 constitute an appropriation bill, and if so, was section 7 (the section vetoed) within the meaning of the foregoing provision of the Organic, an item of such bill?"

The court said that it was not an appropriation bill. It also said:

"It follows conclusively that where the veto power is attempted to be exercised to object to a paragraph or portion of a bill other than an item or items, or to language qualifying an appropriation or directing the methods of its uses, he exceeded the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or language qualifying an appropriation, or directing the method of its use, becomes non-effective."

It then went on to tell us what considerations govern in determining whether or not a provision is an item within the purview of the Constitution:

"If the Governor-General had power under the foregoing clause of section 19 of the Organic Act to veto section 7 of the gratuities bill, he had like power to veto section 2, granting preferences to certain classes of officers and employees; or section 4, allowing a choice between the gratuity granted by the act under review and a gratuity granted by some other act; or section 5, according a right of succession to unpaid gratuities in case of death; or section 6, providing for conditional reappointment of persons separated or retired under the act; or to veto as many of

them as he saw fit. No more than any of the designated sections does section 7 constitute an item of appropriation. All of them are distinct parts of an act of general legislation. The elimination of any by an exercise of the veto power, with the going into effect of the remaining portions of the bill as a consequence (if the veto be not overruled by a two-thirds vote of each house), would result in the enactment of a general law in an emasculated form not intended by the Legislature and against the will, perhaps, of a majority of each house. This would not be negation of an item or items of appropriation by veto but, in effect, affirmative legislation by executive edict.

"So, even if it be conceded that the bill could be characterized as an appropriation bill, section 7 is not an 'item' within the meaning of section 19 of the Organic Act. An item of an appropriation bill obviously means an item which in itself is a specific appropriation of money, not some general provision of law which happens to be put into an appropriation bill. Provisions granting power to the executive to veto an item or items of an appropriation bill are to be found, in various forms of expression, in many of the state constitutions. Their object is to safeguard the public treasury against the pernicious effect of what is called 'log-rolling'—by which, in order to secure the requisite majority to carry necessary and proper items of appropriation, unnecessary or even indefensible items are sometimes included."

In support of its conclusions it cites with approval *State v. Holder,* 76 Miss. 158, 180, 181, 23 So. 643, 644, and calls attention to the fact that the constitution of Mississippi gave to the governor power to veto parts of any appropriation bill. "Parts" is a word capable of wider application than "item" or "items", yet it did not give to the governor power to veto an objectionable provision. In that case, the Mississippi Legislature made an appropriation for the Industrial Institute & College, setting apart certain sums for certain appropriate purposes but declared that payments to officers and employees should not be available unless the

power of approval should be conferred upon the president by the board of trustees. This provision, as to the president, the governor vetoed. The court said that he had no power to transform a contingent or conditional appropriation into an absolute one and that the power given "was not designed to enable the governor to veto objectionable legislation in an appropriation bill," and that this power applied to parts so separable and complete within themselves that they may be taken from the bill without affecting others.

The *Bengzon Case,* though late (decided January 4, 1937), is now leading. It is a decision of all the justices who sat. Mr. Justice Stone did not participate. As reported in 81 Lawyers' Edition, there was called to its attention many or most of the cases which had considered the issues then presented.

It is contended that much that was said in the *Bengzon Case* was but *dicta,* since the bill itself was not an appropriation bill; and the same criticism is directed to *State* v. *Holder, supra.* It may readily be conceded that the bill presented to the Governor-General was not an appropriation bill and that the court with propriety might have stopped when that was ascertained, but it did not, and it tells us in terms what was before it. Of this, it was the best judge.

These authorities answer this contention:

In *McClanahan's Adm'r* v. *Norfolk & W. R. Co.,* 118 Va. 388, 87 S. E. 731, Keith, P., said:

"It is claimed that this statement in the opinion is a mere *obiter dictum,* unnecessary to the decision. We do not so regard it. A decision in a given case is none the less authoritative because the conclusion might have been reached upon more than one ground."

In *Union Pacific R. Co.* v. *Mason City, etc., R. Co.,* 199 U. S. 160, 26 S. Ct. 19, 50 L. Ed. 134, is this statement in the syllabus, sustained by the text:

"A distinct ruling on any question fairly arising in a trial is not *obiter dictum,* and where the judgment rests upon two grounds, either being sufficient to sustain it, and

the appellate court sustains it on both grounds, the ruling on neither is *obiter* but each is the ruling of the court and of equal validity with the other."

Even if it be *dicta*, Mr. Justice Sutherland has told us what the Supreme Court thought, and that was that the veto was unauthorized because the bill was not an appropriation bill and because that stricken out was not an item.

In *In re Opinion of the Justices*, 294 Mass. 616, 2 N. E. (2d) 789, 790, Courts, Key No. 208, States, Key No. 131, Statutes, Key No. 33, the court was asked to construe this constitutional provision, Const. amend., art. 63, section 5: "The Governor may approve or reduce items or parts of items in any bill appropriating money." It said that "items" or "parts of items" referred to separate fiscal units and that no power was given to change the terms of an appropriation except by reducing the amount thereof; that a condition attached to an appropriation was not an item and that "words or phrases are not items or parts of items."

In *Wood* v. *State Administrative Board*, 255 Mich. 220, 238 N. W. 16, 17, the court was asked to say, "Can the Governor reduce the specific items of an appropriation bill?" and answered: "No." The constitution of Michigan, art. 5, section 37, provides that:

"The governor shall have power to disapprove of any item or items of any bill making appropriations of money embracing distinct items; and the part or parts approved shall be the law; and the item or items disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the executive veto."

The court said that this general veto power did not carry with it authority to modify a bill by partial disapproval.

In *Fulmore* v. *Lane*, 104 Tex. 499, 140 S. W. 405, 409, it appears that the constitution of Texas, art. 4, section 14, authorizes the governor to exercise his veto in this case: "If any bill presented to the governor contains several items of appropriation he may object to one or more of such items and approve the other portion of the bill." A bill gave to

the attorney general's office $83,160 to be expended during two fiscal years and directed that certain parts thereof be spent in certain ways. It was held that the governor had no power to veto a portion of a bill or language qualifying an appropriation or directing the method of its use.

In *Fergus* v. *Russel,* 270 Ill. 304, 110 N. E. 130, 147, Ann. Cas. 1916B, 1120, it appears that the constitution of Illinois, art. 5, section 16, provides that "if the Governor shall not approve any one or more of the items or sections contained in any bill, but shall approve the residue, it shall become a law." The court said:

"We think it is clear that the power given the Governor by the Constitution to disapprove of and veto any distinct item or section in an appropriation bill does not give him the power to disapprove of a part of a distinct item and approve the remainder. * * * The Constitution contemplates that the Governor shall approve or disapprove of an item in toto."

There an item of $2,500 for a publication per annum of the decisions of the court of claims was amended by striking out "per annum;" another appropriation of $4,500 was reduced to $3,500, neither of which, it was said, could be done. It went on to point out that when the governor is engaged in considering bills, he acts in a legislative capacity but in a qualified sense, and that his power is destructive but not creative, a distinction pointed out in *State* v. *Holder, supra.* It pointed out further that this view was not followed in *Commonwealth* v. *Barnett,* 199 Pa. 161, 48 A. 976, 55 L. R. A. 882, but calls attention to the fact that the constitution of Pennsylvania uses the words "item" and "part" interchangeably, which was not the case with the Michigan constitution and is not the case with ours. *State* v. *Holder, supra,* also directs attention to limitations which rest upon executive or gubernatorial legislation.

In *State* v. *Henry,* 218 Wis. 302, 260 N. W. 486, 491, 99 A. L. R. 1267, Action, Key No. 6, Statute, Key Nos. 33-64 (1), 107 (7), it appears that the constitution of Wisconsin, art. 5, section 10, conferred upon the governor this

power: "Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for other bills." It was held that the power to approve a part of an appropriation bill gave to the governor power to veto sections of the bill stating the legislative purpose and appointing a new administrative agent to carry it into effect; but it was pointed out in a headnote in support of this case in the Northwestern Reporter that the word "part" is broader than the word "item," and has been defined as "one of the portions, equal or unequal, into which anything is divided or regarded as divided, whether actually separate or not."

In a note to 35 A. L. R., p. 606, it is said:

"Although, in a few cases, the veto of a part of an item by means of reducing its amount and approving the item for only a part has been upheld, it appears to be the better rule that the governor has generally no power to reduce the amount of an item. And it would seem that the effect of such an unauthorized veto would generally be to render the entire item operative."

Cases dealing with this subject are not very helpful where constitutional provisions differ from those in ours.

We think it is plain that the veto power does not carry with it power to strike out conditions or restrictions. That would be legislation. Plainly money devoted to one purpose can not be used for another, and it is equally plain that power to impose conditions before it can become available is legislation.

An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose. It is something different from a provision or condition, and where conditions are attached, they must be observed; where none are attached, none may be added.

Of course, if for any reason any item may be unconstitutional it may be stricken out, for it would be futile to require the Keeper of the Rolls to transcribe it thereon. It may be inherently unconstitutional, and it may violate

section 52 of our Constitution, which declares that "No law shall embrace more than one object which shall be expressed in its title."

We shall now consider seriatim these seven challenged vetoes. If they deal with items contemplated by the Constitution, our inquiry is at an end; if not, we must further determine if their insertion into the budget bill violates section 52 of our Constitution.

For convenience, they will hereafter be referred to by number.

## Veto No. 1

### DEPARTMENT OF LAW

#### Attorney General

| | First Year | Second Year |
|---|---|---|
| For providing legal services for the State.... | $60,960 | $60,110 |

Out of this appropriation shall be paid the following salaries wages and special compensation:

| | |
|---|---|
| Attorney General ................ | $ 8,000 |
| Assistant attorneys general, (3) at $5,000 ..................... | 15,000 |
| Assistant attorney general....... | 4,500 |
| Assistant attorney general....... | 4,250 |
| Assistant attorney general....... | 4,000 |
| Additional salaries for senior and junior attorneys, six secretaries, printing, traveling, communications, law books, office supplies, equipment, and other items shown in the budget, including in addition investigation of gasoline prices pursuant to joint resolution of the General Assembly ...................... | 24,960 |
| State's share of expenses Interstate Crime Commission........ | 250 |

Out of this appropriation $13,500 is payable out of the proceeds of the tax on motor vehicle fuel.

First Year Second Year

It is provided that all attorneys au-
thorized by this act to be employed by
any department or agency, and all at-
torneys compensated out of any moneys
appropriated by this session of the
General Assembly, shall be appointed
by the Attorney General, and be in all
respects subject to the provisions of
section 374a of the Code of Virginia.

I hereby veto this
item April 2, 1940.

JAMES H. PRICE,
*Governor.*

## VETO NO. 2

### DIVISION OF THE BUDGET

For supervision of preparation and admin-
istration of executive budget and mainte-
nance of records and accounts ........$22,327 $28,147

Out of this appropriation the following
salaries and wages shall be paid:

Director ...............$4,500

A Legislative Director.... 6,000

The said Legislative Director shall
be elected or appointed by a majority
of the members of the Senate Com-
mittee on Nominations and the House
Committee on Confirmations; the mem-
bers of said committees to be called to-
gether at any time prior to July 1,
1940 by the Chairman of the Senate
Committee on Nominations. It shall
be the duty of the said Legislative Di-
rector to cooperate with the Executive
Director of the Budget and the State
Comptroller in the supervision of ex-
penditures out of all appropriations
made by the General Assembly, and
to assist in the preparation of the
biennial budget. It shall be the duty
of the Attorney General to give his
written opinion to the Executive Di-
rector or the Legislative Director upon
any question arising out of the dis-
charge of their duties whenever re-
quested in writing so to do. The said

I hereby veto this
item which is con-
tinued on next page
April 2, 1940.

JAMES H. PRICE,
*Governor.*

First Year Second Year

Legislative Director shall be entitled to employ a secretary at a salary not exceeding fifteen hundred dollars per year, whose salary shall be paid out of this appropriation.

It is provided that such Legislative Director shall be advisory to the General Assembly, and it is expressly declared not to be the purpose of this provision to impair the Governor's control over the preparation and execution of the State budget. In the interim between sessions of the General Assembly he shall, under the supervision of the Director of the Division of the Budget, continue to serve as chief of the section of records and control and to perform such other duties as may be assigned by the Director of the Division of the Budget.

I hereby veto this item beginning with the words "A Legislative Director" on page 5 beginning on the eighth line from the bottom of said 5th page, and continuing on page 6th through the 24th line from the top of the page, April 2, 1940.

JAMES H. PRICE,
*Governor.*

## VETO NO. 3

Additional salaries and wages not exceeding ..............$ 7,040 the first year, and $8,060 the second year.

I hereby veto this item April 2, 1940.

JAMES H. PRICE,
*Governor.*

## VETO NO. 4

### VIRGINIA STATE PLANNING BOARD

For general administration and land classification .............................$22,590 $22,790

Out of this appropriation shall be paid the following salaries only:

Head executive ..............$ 6,000
Associate executive, not exceeding ........................ 3,000
Additional salaries ............ 8,000

First Year Second Year

It is hereby provided that no part of this appropriation shall be used by the Virginia State Planning Board, or any other agency of the State Government for the investigation and study of county government in Virginia or elsewhere.

I hereby veto this item April 2, 1940.

JAMES H. PRICE,
Governor.

## VETO NO. 5

No part of the money appropriated to, or otherwise received by, the Commission of Fisheries shall be used for the maintenance or operation of that certain boat recently purchased by the said Commission, and known at the time of its purchase, as the "Sirene"; and the Commissioner of Fisheries, with the approval of the said Commission, shall promptly proceed to sell said boat at the best obtainable price, and return the amount received therefor to the fund from which the money was withdrawn for the purpose of paying for said boat.

I hereby veto this item April 2, 1940.

JAMES H. PRICE,
Governor.

## VETO NO. 6

Provided further, however, that no reduction of more than ten per cent shall be made under this section in any annual salary of any officer or employee.

I hereby veto this item April 2, 1940.

JAMES H. PRICE,
Governor.

The salary of any State official or employee which has been increased by order or authority of the Governor to an annual rate in excess of $4,000, to take effect on any date on or after January 1, 1940, shall, in the event such general reduction becomes necessary, be reduced to an annual rate of pay

I hereby veto this item April 2, 1940.

JAMES H. PRICE,
Governor.

First Year Second Year

I hereby veto this item April 2, 1940.

JAMES H. PRICE, Governor.

of $4,000, or to the annual rate of pay in effect immediately before such salary increase became effective, whichever is greater and shall be further subject to any general reduction in s a l a r i e s which may be ordered by the Governor under the terms of this section, such reduction to be computed on the amount of such salary after the elimination of the increase so made.

I hereby veto this item April 2, 1940.

JAMES H. PRICE, Governor.

VETO No. 7

For his assistance in carrying out the provisions of this section the Governor may require information in writing from the head of any department, institution or agency of the State government or from any employee thereof, upon any subject relating to the duties of any office or position in such department institution or agency.

It is further provided, however, that neither the provisions of this section or of Chapter 88 of the Acts of 1926 shall apply to the Legislative and Judiciary Departments, or to any appropriations made in this Act to said departments.

I hereby veto this item April 2, 1940.

JAMES H. PRICE, Governor.

Veto No. 1: Code, section 374a, places the Attorney General in charge of the Commonwealth's Department of Law. He is authorized to employ all regular attorneys to aid him in the discharge of his official duties. The Governor has the power, in instances not here in point, to employ special counsel. The declared policy of the Common-

wealth is to concentrate administrative duties to the end that they may be more efficiently performed and that there be no difficulty in ascertaining upon whom responsibility for inefficient performance should rest. The Legislature thought it well to place the power of appointment over certain attorneys in the hands of the Attorney General. This duty and this power is germane to his office and is intimately interlocked with its successful administration. We are here dealing with provisions and not with items, and that is doubly true if this under review were to be treated as general legislation.

In any event, it is a provision or condition which tells us by whom these attorneys are to be employed and from what source they may expect compensation. This veto was not authorized by section 76 of the Constitution.

Veto No. 2: That part of the bill by it stricken out provides for a Legislative Director at a salary of $6,000; it tells how he should be elected or appointed. It further provides that "It shall be the duty of the Legislative Director to cooperate with the Executive Director of the Budget and the State Comptroller in the supervision of expenditures out of all appropriations made by the General Assembly, and to assist in the preparation of the biennial budget." In the Commonwealth's brief it is said:

"It will be noted that, while many of the duties this officer is required to perform are under the supervision of the Governor and the Executive Director of the Budget, there is one duty imposed on him which has no relation to any of the provisions of section 2577a to 2577k of Michie's Code, (the Budget Office Act). This added function is to cooperate with the Comptroller in the 'supervision of expenditures out of all appropriations.' There is no existing statute which confers any such authority or imposes any such duty on the budget office. The obvious purpose is to bring about a correlation of the activities of the two offices and give the Comptroller the benefit of the advice and consultation of the two budget directors in passing on the validity of vouchers and issuing warrants to cover expendi-

tures of appropriations most of which are recommended in the budget."

■ The creation of a new office, its holder to serve at a stated salary, without more, would be an "item" which the Governor at his election might veto, but if it be tied up with other budget provisions, then under the terms of the Constitution it can not be eliminated. Here he is to co-operate with the Executive Director of the Budget and the State Comptroller in the supervision of expenditures out of all appropriations made by the General Assembly. It may be that the Executive Director of the Budget and the State Comptroller are amply able to protect the interests of the Commonwealth in the expenditure of its appropriations. It may be that this office and officer were not needed, but the Legislature thought it well that in addition they should have the benefit of an additional safeguard—of a Legislative Director. It is these three officers, and not any two of them, who are charged with this supervision. It is a duty extraordinarily important. To secure its efficient, faithful and intelligent performance we are given three supervisors; at times a three-judge court has been thought wise. The supervision of expenditures provided for in the budget bill is a wise provision and must be, if the intention of the Legislature is observed, supervised by those named to supervise—that is to say, this Legislative Director is given a coordinate measure of control over an indefinite number of budget items. If one supervisor may be eliminated, another might be, and this "item" or his office is not one which does not affect other approved "item" or "items." This Legislative Director is in part responsible for the proper use of many items in the appropriation bill and serves as another check on arbitrary action. For these reasons, this veto can not be sustained under section 76 of the Constitution.

■ Veto No. 3: If the Legislature had power to create the office of Legislative Director, then it follows that it had power also to provide for salaries and wages of his employees. To deprive him of their assistance would be to

cripple his efficiency; and it was for the Legislature to say what was a sum sufficient. For reasons already indicated, this veto should not be sustained.

Veto No. 4: This deals with the Virginia State Planning Board. Certain appropriations are made for its administration. The Legislature declared that no part of the money so appropriated should be used for the investigation of county government. Plainly this is a condition and not an item. As an item, it can not be vetoed.

Veto No. 5: It is here said that the Commission of Fisheries shall use no money under its control for the operation of a certain boat recently purchased by it. This is not an item and is subject to this further objection: If funds be expended upon this boat, they would be spent for a purpose not authorized by the Legislature. Here, again, as an "item," this veto was unauthorized.

Veto No. 6: This deals with State officers or employees whose compensation has been increased by the Governor to an annual rate in excess of $4,000. It is provided that should general reductions become necessary, these salaries should be put back to $4,000, or to the annual rate of pay immediately in effect before such increase became effective. Plainly this is not an item but is a provision providing for a reduction in compensation in certain circumstances. This is not an item to be vetoed.

Veto No. 7: Here the Governor was given power to require information from the heads of any department upon subjects relating to their office, but it went on to declare that this provision should not apply to the Legislative or to the Judiciary. This is not an item. Moreover, our Constitution has endeavored to keep as independent entities, except in certain circumstances named, the executive, legislative and judicial departments of the government. The limitation thus imposed is in keeping with that general policy. This, too, is not an "item" and as such could not be vetoed.

These vetoes must be sustained if they deal with matters which should not have been put in the bill at all,

for, as we have seen, "No law shall embrace more than one object which shall be expressed in its title." Constitution, section 52. Plainly matters unrelated and not to be expected should not be injected into a bill in order to secure the support of hesitant members of the General Assembly, or for any other reason. But matters germane to the object, made manifest by its title, may be included. Those things are germane which are allied, relative or appropriate. Its construction must be liberal and because of this statutes are not to be declared unconstitutional unless that conclusion is inevitable. Able judges, in varying phraseology, have told us of its purpose. In *Southern Ry. Co.* v. *Russell,* 133 Va. 292, 112 S. E. 700, Judge Burks has stated those governing principles which have been followed time and time again:

"We have so often laid down the rules for the construction of the language of section 52 of the Constitution that there is practically nothing left to be said on the subject.

"In *Town of Narrows* v. *Giles County,* 128 Va. 572, 582, 583, 105 S. E. 82, 85, one of the latest cases on the subject, it is said: 'The constitutional provision was never intended to hamper honest legislation, nor to require that the title should be an index or digest of the various provisions of the act, and it is rare that the generality of the title is a valid objection thereto. The fact that many things of a diverse nature are authorized or required to be done in the body of the act, though not expressed in its title, is not objectionable, if what is authorized by the act is germane to the object expressed in the title, or has a legitimate and natural association therewith, or is congruous therewith, the title is sufficient. This subject is fully discussed by Judge Riely in *Commonwealth* v. *Brown,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110. See also, *Ingles* v. *Straus,* 91 Va. 209, 21 S. E. 490; *Commonwealth* v. *Willcox,* 111 Va. 849, 69 S. E. 1027; *Commonwealth* v. *Chesapeake & Ohio Ry. Co.,* 118 Va. 261, 87 S. E. 622; *Cochran* v. *Commonwealth,* 122 Va. 801, 94 S. E. 329; *Lucchesi* v. *Commonwealth,* 122 Va. 872, 94 S. E. 925, and cases cited. Furthermore, if there is doubt as to the sufficiency of the title, the

doubt must be resolved in favor of its sufficiency, as courts will not declare an act of the legislature unconstitutional unless it is plainly so. *City of Roanoke* v. *Elliott*, 123 Va. 393, 96 S. E. 819, and cases cited. Of course the title must not be made a cover for surreptitious or incongruous legislation, nor be such as to mislead the legislature or the people, but should fairly state the general subject covered by the body of the act. *Powell* v. *Supervisors*, 88 Va. 707, 14 S. E. 543. Subject to these limitations, the generality of the title is not a valid objection'."

All of this we reaffirmed in the late case of *West Bros. Brick Co.* v. *Alexandria*, 169 Va. 271, 192 S. E. 881, where it is said:

"If the title be not misleading and if those things are done which are germane to it, that is enough. This constitutional provision was intended to prevent the insertion of rights or reservations which cannot bear the light of public scrutiny and which, if uncovered, would not be tolerated. Where this is done that provision should be enforced to the letter."

This rule has been elsewhere generally approved.

"It is not necessary that the connection, or relationship, shall be logical; it is enough if the matters are connected with and related to a single subject, in popular signification. The generality of the title of an act is no objection, provided only that it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected." *Johnson* v. *Harrison*, 47 Minn. 575, 50 N. W. 923, 924, 28 Am. St. Rep. 382, cited and followed in *Richmond* v. *Pace*, 127 Va. 274, 103 S. E. 647.

It applies with added force when we come to consider bills which are in effect pocket codes, such as the Motor Vehicle Code, the School Code, the Tax Code and, indeed, the Code itself, where there are provisions and conditions too numerous to catalogue or index. That in judgment relates to the appropriation of revenue and prescribes the provisos, terms, conditions and the provisions with respect

to the items of appropriation and repeals all inconsistent acts to the extent of such inconsistency. To have indexed this would have made the title unconscionably long and, as we have said, was not required.

We shall now undertake to apply these principles to the vetoes under review.

 Veto No. 1: Heretofore we have held that this was not an item, and much that was then said applies to its constitutionality. All that is done by the attorneys representing the Commonwealth may come to the Attorney General for review. He may have to sustain them, if he can, or confess error. That he should have a voice in their selection is both congruous and germane. Moreover, the Legislature, in fixing the salary of an officer, may define his duties. It may define them in whole or in part, and if what is said or done conflicts with a law previously in force, we follow the last legislative fiat. Upon him here is placed the duty and responsibility of selection.

 Veto No. 2: Even if we conceded that a legislative director was not needed, yet that was a view not taken by the Legislature. It might have appointed two legislative directors, or have provided such other safeguards in payment out of appropriations which it deemed wise and prudent.

 Veto No. 3: As we have heretofore indicated, the appropriation here vetoed was intended to strengthen the hands of the Legislative Director. The Legislature had the power to do this, and its constitutionality is beyond question.

 Veto No. 4: The Legislature has here said that a certain appropriation shall not be used for a certain purpose. It had the undoubted right to designate the purposes for which it should be used; if any part of it should be used in the investigation and study of county government, that was for the Legislature to say. Its wisdom in reaching its conclusion as to this is something which does not concern us, but plainly it can not be used except for designated purposes; and since the Legislature has said that it

can not be used for this purpose, to so use it would be an unauthorized use.

██ Veto No. 5: The Legislature has here again said for what purpose an appropriation might be used. Just why it was of opinion that none of it should be used for the maintenance or operation of the "Sirene" we do not know. It may have thought that this boat was not worth repairing or that its services were not needed. All of this was for the Legislature, and, as we have already said, to expend funds upon it would be to expend them for an unauthorized purpose.

██ Veto No. 6: Here the Legislature said that the salaries of certain officers should be reduced should the income of the State fall away. That, too, was prudent and was in line with the general policy of the State.

Veto No. 7: On page 862 of the appropriation act this appears:

"For his assistance in carrying out the provisions of this section the Governor may require information in writing from the head of any department, institution or agency of the State government or from any employee thereof, upon any subject relating to the duties of any office or position in such department, institution or agency."

██ This vetoed provision in substance says: No approval of the Governor shall be required as a condition to the payment, out of the moneys appropriated by this act, of the compensation or salary or any officer or employee in the Legislative or Judicial Departments, any provision in this act or any other act to the contrary notwithstanding. The three great divisions of governmental power provided for in our Constitution are of coordinate dignity and are to be observed except in certain designated instances not present here. We should uphold the constitutionality of an act whenever it is possible, and where a statute is susceptible of two constructions, we adopt that which will sustain it. Michie's Digest, Vol. 2, p. 714, citing many cases. If the paragraph preceding this vetoed provision required information from the Legislature or from the Judiciary, it

is unconstitutional; if not, it is. Section 39 of the Constitution declares that

"Departments to be distinct.—Except as hereinafter provided, the legislative, executive and judicial departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time."

There is no head of the Legislature upon whom demand might be made, and could the Governor say to the Chief Justice that in his opinion a Tipstaff is not needed or that he is being paid too much? Plainly the Legislature may designate its employees and may fix their compensation. It may name those who are to be employed in the Judiciary Department and fix their compensation, just as it may provide for a legislative director or an assistant attorney general and of course for such other stated purposes as might seem to the Legislature necessary and proper; but subject to this, the Judiciary Department, within the limits of its appropriations, may engage the services of such assistants as seems necessary and proper to it, and over this the Governor has no control.

In this connection reference is made to Session Acts 1926, ch. 88, p. 86, and to p. 862, par. 3, of the appropriation bill. If these acts were to be construed as conferring upon him such power, then to that extent they would be unconstitutional. To restate the proposition, the Legislature within the limits of the Constitution is the judge of how its own appropriations shall be applied, and the Judiciary, subject also to limitations noted, may use money set apart for it in such manner as may appear to be wise and proper. These vetoed provisions purport to take away from the preceding paragraph a power which in fact was not there if that paragraph is construed as it should be construed. When the Legislature said that it should not apply to the Legislative or Judicial Departments, it but restated what was already law. It was superfluous and the veto should be sustained. The power of the Legislature,

which does not sit continuously, to delegate to the Executive the right under named conditions and to a stated extent, is not before the court and has not been challenged.

These unsustained vetoes strike out matters which are germane or congruous to an appropriation bill, its provisions and conditions. There is nothing about them which should have misled the Legislature or the people, and certainly there is nothing about them surreptitious. If other statutes are repealed, the bill itself has made provisions therefor. Moreover, as we have said, the bill itself is a statute.

Reliance is placed upon administrative construction; such construction is undoubtedly entitled to weight. Since 1904 two governors have availed themselves of the privilege of vetoing items or unconstitutional provisions, Governor Mann and Governor Peery. Undoubtedly they have the power to do so in proper cases. Governor Mann first vetoed a provision cancelling a contract with The Michie Company and authorizing the Secretary of the Commonwealth to sell our reports at a stated price. His reason for doing this was that in his judgment it was unconstitutional but gives no reason for his conclusions. That part vetoed reads: "The act of April 2, 1902, approving and confirming a contract with the Michie Company, entered into February 21, 1900, is hereby rescinded and repealed, to take effect July 1, 1910." He may have thought that the State should keep its contract, as others must.

Governor Peery vetoed an item appropriating $40,000 for aid of counties in the administration of the Trial Justice Act. This was an item. Moreover, $60,000 had already been appropriated for that purpose. Here was a definite sum set apart for a definite purpose. He vetoed it as an item, and with his judgment as to that we have no quarrel. The Governor also vetoed an accumulation of amounts already accumulated or to be accumulated of a V. M. I. fund by striking out "or to be accumulated." If this was one item, the Governor should not have stricken out a part of it. Moreover, provisions were made for an indefinite accumula-

tion, while section 186 of our Constitution provides that "No money shall be paid out of the State treasury except in pursuance of appropriations made by law; and no such appropriation shall be made which is payable more than two years and six months after the end of the session of the general assembly at which the law is enacted authorizing the same." From which it appears that these vetoes as evidence of administrative construction are not very helpful, for it has nowhere been contended that proper partial vetoes in proper instances should not be sustained.

Legislative construction of legislative action theretofore had is also helpful. The title to the appropriation act for 1938, ch. 428, *mutatis mutandis,* is word for word that under review here; those for the acts of 1936, ch. 422, and 1934, ch. 358, are even more general in their titles as indicative of their purpose. All contain conditions, provisions or restrictions. Indeed, in the nature of things, these qualifications are at times necessary and are proper so long as they are germane or congruous to the purpose of the act.

It is said that if the Attorney General be right in his contention and if these vetoed items be restored to the bill, we have one which the Governor, in all human probability, would not have approved and one which he certainly did not approve; and this, it is claimed, leads inevitably to the conclusion that we have no appropriation bill at all. To support this a number of authorities are cited, among them *State* v. *Dammann,* 220 Wis. 143, 264 N. W. 622, 625. The court there said: "However invalid and nugatory the veto may have been it did in fact operate to destroy the unequivocal character of the Governor's approval."

If this be true, then no attack on a veto, however patently unconstitutional, can succeed, for the restoration of the vetoed item would of itself invalidate the bill to which it was restored. Few would assail a veto in an appropriation bill when they must fail if they fail and fail if they succeed.

Other authorities hold that an unconstitutional veto is no veto at all and at best is but an idle gesture; that the items vetoed were in fact never stricken out and that an

unequivocal and unconditional approval validates the bill as a whole. In *In re Opinion of Justices, supra,* the court said:

"The question then arises whether item 101 of the general appropriation bill has become law with the condition attached. Since the disapproval of the condition was without effect, the general approval of the act gave it validity."

There is logic in both of these contentions, but logic itself may sometimes be pushed too far.

As was pointed out by Keith, P., in *Burton & Conquest v. Commonwealth,* 108 Va. 892, 62 S. E. 376:

"Our jurisprudence, in this and in other respects, may be amenable to criticism of schoolmen and logicians, but subjected to the test of actual experience it has appeared in practice to be well that the law, after framing definitions and formulating rules of conduct, should allow to courts and juries, in their application and enforcement, a certain latitude and discretion."

Practical values or consequences are to be remembered. ▮ In the conservation and development of its physical resources the Commonwealth of Virginia is a great business corporation. To wipe away this appropriation bill under which it has and is operating would throw its fiscal affairs into undesirable confusion. This as a consequence should be avoided if there be any avenue of escape. We therefore reach the conclusion that these unconstitutional vetoes did not invalidate the budget bill as a whole, which, as we have seen, has been unconditionally approved.

The matters vetoed are not in themselves of first importance. No vital interests of the Commonwealth are affected; with them in or out, it moves on in its appointed way, and so also many inquiries suggested by the statutes noted might be trivial, inconsequential or vexatious and would at times impose upon the Governor a burden disproportionate to their importance. From them he would doubtless like to be relieved. The Legislative and Judicial Departments of the government are best qualified to deal with details which naturally fall within their provinces.

Those who appear from the record to be interested have little personal interest beyond that which touches every citizen of the Commonwealth. They have merely undertaken to administer the law as they, upon reflection, have thought that it should be administered. There is one aspect of this case, however, which is of importance; it deals with the line of demarcation between the three great political subdivisions of government marked out in our Constitution. To some extent, at least, it tells us when they may overlap and when not.

Mandamus should issue in each instance as prayed for except as to Veto No. 7, which is sustained, and it is so ordered.

HUDGINS, J., dissenting.

The majority opinion holds that the sum appropriated for the salary of a Legislative Director of the Budget and the sum appropriated for additional employees, in vetoes numbers 2 and 3, are "items" within the meaning of section 76 of the Constitution, and to that extent the objections of the Governor, as expressed in these two vetoes, are valid; but the opinion declares that these items are so "tied up with other Budget provisions" that they can not be eliminated by separate vetoes.

The only manner in which the items in question are "tied up" with the other items of the Budget is by the two paragraphs, creating the office of a "Legislative Director" and defining his duties, inserted in the bill following the line appropriating money for his salary.

The Budget system was adopted as a separate bill in 1918 (see Acts of 1918, p. 118). Section 11 of this act provided: "The Governor shall be the chief budget officer of the State and shall employ competent budget assistants and such special help as he may require to carry out the provisions of this act." This section of the act was amended in 1922 (see Acts of 1922, p. 532), providing, among other things: "The Governor shall be the chief budget officer of the State and

he shall appoint a deputy budget officer to be known as the Director of the Budget, who shall serve," etc.

In 1927 (see Virginia Extra Session Acts of 1927, p. 103), after a careful study by Governor Byrd and a commission appointed by him, the State government was reorganized, as stated in the title of the act, "to secure better service, and through co-ordination and consolidation, to promote economy and efficiency in the work of the government; to create and establish or continue certain departments, divisions, offices, officers, and other agencies, and to prescribe their powers and duties."

This act created in the Governor's Office four divisions: (1) Division of the Budget; (2) Division of Records; (3) Division of Military Affairs; and (4) Division of Grounds and Buildings. It was also provided therein that the Division of the Budget shall be under a director appointed by the Governor, who shall hold office at the Governor's pleasure. The duties of this officer were specifically enumerated. Section 7 of the act created twelve administrative departments, among them the Department of Finance. This department was divided into the Division of Accounts and Control, the Division of the Treasury, the Division of Purchase and Printing, and the Division of Motor Vehicles. The act further provided that the Director of the Division of Accounts and Control be appointed by the Governor and be known as the Comptroller. His duties were specifically described and enumerated. The director of each division is appointed by the Governor subject to confirmation by the General Assembly. This act eliminated overlapping duties and made each department head responsible for the efficient administration of that department. The offices of the Director of the Budget and the Comptroller thus became integral parts of the administrative affairs of the State. These offices were created and their separate duties defined only after careful study, public discussion and the recommendation of various commissions. These departmental divisions of the government of Virginia, with responsible directors, represent a well established public policy of this State.

These results were obtained only after the reorganization bill received the affirmative vote of a majority of the members of the two houses and the express approval of the governor then in office.

The two paragraphs, which the majority declares to be such conditions as to invalidate the Governor's veto, are attached to the appropriation of comparatively small sums of money, but the provisions in these paragraphs change a vital part of the administrative system of the State government which for many years has met the approval not only of the citizens of this Commonwealth, but has been followed and adopted in numerous other states.

The first paragraph, to which the Governor, by veto number 2, objected, along with the item appropriating money, provides for an executive officer at a salary of $6,000 annually, $1,500 in excess of the salary designated for the Director of the Budget. The provision creating this office provided that the office should be filled by the Nominating Committee of the Senate and the Confirmation Committee of the House. All other officers of the State, with equal duties, responsibilities and dignity, are either appointed by the Governor, subject to confirmation by the Senate or the General Assembly, or elected by the General Assembly, or the people at large. This manner of filling an executive office of such importance is an innovation on the established public policy of this State.

The second paragraph in veto number 2, to which the Governor objected, provides that the duties of this officer, designated as a "Legislative Director of the Budget," shall be in part co-ordinate with that of the Director of the Budget, and in part co-ordinate with that of the Comptroller, thus dividing responsibility and tending to retard the efficiency of the two departments established by general law. The Legislature has the authority to amend or repeal the entire Budget system and abolish the departments created under the reorganization act of 1927, but, under the Constitution of Virginia, this can be done only in one or two ways—that is; by a bill passed by both houses and ap-

proved by the Governor, or by a bill adopted by a two-thirds majority of each house over the Governor's veto.

The insertion of such provisions in a Budget bill is in conflict with the provisions of section 52 of the Constitution, as these provisions substantially change the established method of filling such an important office and divide the responsibility of two most essential administrative offices established by general law. The holding in the majority opinion deprives the Commonwealth of the benefit of the Governor's unbiased and deliberate judgment, as contemplated in section 76 of the Constitution, on a matter of general legislation not "expressed" in the title to the appropriation bill.

For these reasons I am constrained to dissent from the majority opinion insofar as it declares vetoes numbers 2 and 3 to be invalid.