

# THE ATTORNEY GENERAL
# OF TEXAS
### AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

June 28, 1951

Hon. Allan Shivers
Governor of Texas
Austin, Texas

Opinion No. V-1196

Re: Authority of the Governor
to veto separate riders in
the general appropriation
bill, and related questions
with respect to House Bill
426.

Dear Governor:

Your request for an opinion of this office was received on June 14, 1951, and concerns the riders to House Bill 426, 52nd Legislature, the general appropriation bill. The following questions are presented.

    1. Does the Governor have authority to veto a rider if it is unconstitutional?

    2. Is each rider to House Bill 426 constitutional or authorized by statute?

Further, you request such advice with respect to each rider as this office "feels would be of benefit to the agency or department affected in order that they may be properly guided."

The veto power of the Governor is a legislative and not an executive or judicial function. Hence, the Governor has only such power as the Constitution confers upon him, and in the absence of express authorization he may not disapprove of certain paragraphs or portions of a bill and approve the remainder. Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911); Annotation, 35 A.L.R. 600, and cases cited therein.

The authority of the Governor to approve or disapprove legislation is contained in Article IV, Sec. 14, of the Constitution of Texas, which is as follows:

"Sec. 14. Every bill which shall have passed both houses of the Legislature shall be presented to

**272**

the Governor for his approval. If he approve he shall sign it; but if he disapprove it, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large upon its journal, and proceed to reconsider it. If after such reconsideration, two-thirds of the members present agree to pass the bill, it shall be sent, with the objections, to the other House, by which likewise it shall be reconsidered; and, if approved by two-thirds of the members of that House, it shall become a law; but in such cases the votes of both Houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered on the journal of each House respectively. If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Legislature, by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after such adjournment. If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. If the Legislature be in session, he shall transmit to the House in which the bill originated a copy of such statement and the items objected to shall be separately considered. If, on reconsideration, one or more of such items be approved by two-thirds of the members present of each House, the same shall be part of the law, notwithstanding the objections of the Governor. If any such bill, containing several items of appropriation, not having been presented to the Governor ten days (Sundays excepted) prior to adjournment, be in the hands of the Governor at the time of adjournment, he shall have twenty days from such adjournment

Hon. Allan Shivers, Page 3, V-1196

within which to file objections to any items there-
of and make proclamation of the same, and such
item or items shall not take effect." (Emphasis
added throughout.)

Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911),
is the only Texas case on the authority of the Governor to veto
a rider in an appropriation bill, and is recognized as one of the
leading cases on this subject. The following excerpt from the
opinion of Justice Ramsey in that case vividly illustrates the ac-
tion of the Governor in vetoing a part of the appropriation bill
there involved:

" 'Attorney General's Department.

For the Years Ending--
August 31,1912 - August 31,1913.

For the support and maintenance of the
Attorney General's department, in-
cluding postage, stationery, telegrams,
telephones, furniture, repairs, express,
typewriters and fittings, contingent ex-
penses, costs in civil cases in which the
State of Texas or any head of a depart-
ment is a party; for the actual traveling
expenses and hotel bills incurred by the
Attorney General or any of his assistants
or employés in giving attention to the
business of the state elsewhere than in
the city of Austin; for depositions and
procuring evidence and documents to be
used in civil suits or contemplated suits
wherein the state is a party; for law books
and periodicals; for the payment of any
and all expenses incident to and connected
with the administration of the duties of
the Attorney General's office; for the en-
forcement of any and all laws, wherein
such duty devolves upon the Attorney
General; for the payment of any and all
expenses in bringing, prosecuting and de-
fending suits; for the payment of the salary
and maximum fees provided by the Con-

**274**

stitution for the Attorney General, and for the payment of the salaries and compensation of his assistants and employés and other help deemed by the Attorney General to be necessary to carry on the work of the Attorney General's department, there is hereby appropriated ~~the sum of eighty-three thousand and one hundred and sixty ($83,160.00) dollars,~~ to be expended during the two fiscal years ending August 31st, 1912, and August 31st, 1913, to be paid by the Treasurer on warrants drawn by the Comptroller upon vouchers approved by the Attorney General, . . . . . . . . . .$41,580.00 ~~$41,580.00~~

"For the guidance of the Attorney General in the expenditure of such sums out of the above item of appropriation of $83,160.-00 as may be necessary to properly conduct the business of his department, he is hereby empowered and authorized to employ such regular assistants as he may deem necessary, not to exceed seven in number at any one time, one of such assistants he shall designate as First Office Assistant Attorney General; and there may be expended out of the above item of appropriation a sum not exceeding $20,000.00 per annum for the purpose of paying the salary of the Attorney General at $2,000.00 per annum and such fees as are prescribed by law, not to exceed $2,000.00 per annum, and for the purpose of paying the salaries of the assistants employed; provided that no assistant shall receive more salary than $2,500.00 per annum; and the Attorney General shall have the power and authority to employ such stenographic clerks as he may deem necessary to carry on the work of the department, not to exceed four in number, one of whom shall be chief clerk and bookkeeper, and there may be expended out of the above item of appropriation a sum not to exceed $4,000.00 per annum to pay the salaries of such stenographic clerks, provided that no stenographic clerk shall receive more than $1,300.00 per annum; there may be employed one porter who shall be paid out of the above item of appropriation a salary of $480.00 per annum, there may be expended out of the above item of appropriation, for postage, stationery, telegrams, telephones, furniture, repairs, express, typewriters, and fittings and contingent expenses so much thereof as may be necessary, not to exceed

the sum of $1,350.00 per annum. The remainder of the above
item of appropriation, or so much thereof as may be deemed
necessary by the Attorney General, shall be expended for costs
in civil cases in which the state of Texas or any head of a de-
partment is a party; for the actual traveling expenses and hotel
bills incurred by the Attorney General, or any of his assistants
or employés, in giving attention to the business of the state
elsewhere than in the city of Austin; for depositions and pro-
curing evidence and documents to be used in civil suits; or
contemplated suits, wherein the state is a party; for law books
and periodicals; and for the enforcement of any and all laws
of the state of Texas wherein that duty devolves upon the At-
torney General, and for the payment of any and all expenses
deemed necessary by the Attorney General in the prosecution
and defense of all suits, and particularly for the enforcement
of the anti-trust and corporation laws and for the employment
of special counsel and other help when the same may be deemed
necessary by the Attorney General, provided that the head of
said department shall keep a record of the absences of the var-
ious employés and the reasons therefor, whether from sickness,
vacation or on leave of absence, and that the record of such
absence be incorporated in the report made biennially by the
head of said department; provided, that the amount herein ap-
propriated as stated herein, and no more, shall be paid out of
the general revenue for the Attorney General's department
during the fiscal years beginning September 1st, 1911, and end-
ing August 31st, 1913, and provided further, that no deficiency
shall be created, nor shall any warrants be issued nor obliga-
tions incurred in excess of the amounts herein appropriated."
(140 S.W. at 417.)

Although the Court upheld the Governor's veto with re-
spect to the items of "eighty-three thousand and one hundred and
sixty ($83,160.00) dollars" and "$41,580.00," the Court held that
the Governor had no authority to veto the rider shown above. Each
member of the Court wrote a separate opinion, but all agreed on
the lack of authority in the Governor to veto the rider. In the opin-
ion of Justice Dibrell, the following is said:

"The authority of the Governor to veto the
language of the appropriation bill under the Attorney
General's department, which directs the method of his
using the appropriation for that department, is ques-

tioned, and it devolves upon the court to deter-
mine that issue. The duty of defining the power
of the executive in relation to the exercise of the
veto privilege is, as suggested by Chief Justice
Woods in the case of State vs. Holder, 76 Miss.
177, 23 South. 643, one of difficulty and delicacy.
The veto power of the executive under our system
of government is not inherent in such officer as
a legislative function, but is a power confided in
him by the supreme authority of the state; and in
exercising this function, while he is not confined
to rules of strict construction, he nevertheless
must look to the Constitution for the authority to
exercise such power. The principle here enunciat-
ed has been aptly put by the Supreme Court of Illi-
nois, in the case of Field v. People, 3 Ill. 79, in
discussing the question of the Governor's veto
power: 'In deciding this question, recurrence must
be had to the Constitution. That furnishes the only
true rule by which the court can be governed. That
is the character of the Governor's authority. All
the powers delegated to him by or in accordance
with that instrument he is entitled to exercise, and
no others. The Constitution is a limitation upon
the powers of the legislative department of the
government, but it is to be regarded as a grant of
powers to the other departments. Neither the exe-
cutive nor the judiciary, therefore, can exercise any
authority or power, except such as clearly granted
by the Constitution. Upon the principle of our govern-
ment that the sovereign power of the state resides
in the people, and that only such powers as they have
delegated to their functionaries can be exercised,
where a claim of power is advanced by the executive,
the question is not whether the power in question has
been granted to the people, but whether it has been
granted to the executive; and, if the grant cannot be
shown, he has no title to the exercise of the power.'
The Governor of Arizona, under act of Congress pass-
ed July 19, 1876 (19 Stat. 91, c. 212), was authorized
to exercise the veto power to the extent that, if he does
not approve a bill, he shall return it, together with his
objections, to the house in which it originated. No
authority was given the Governor by that act to disap-

prove a bill in part. Exercising the power dele-
gated to him as above stated, the Governor of Ari-
zona returned an appropriation bill to the house in
which it originated with his signature, and added
after his signature that he had approved the bill
except as to subdivision 17 of section 1. His veto
thus expressed was by the Legislature sustained;
but the Supreme Court of Arizona held that the bill
as a whole became a law, as the Governor had no
authority to veto a single item of an appropriation
bill. Porter v. Hughes, 4 Ariz. 1, 32 Pac. 165.

"The executive, while in the exercise of the
veto power, is exercising a legislative function, yet
the authorities are uniform in holding that he has no
power to construct legislation. His authority is pure-
ly negative. This principle was clearly laid down by
Chief Justice Stayton in Pickle v. McCall, 86 Tex.
223, 24 S.W. 268, in the following paragraph: 'The
Legislature has the affirmative power to enact laws,
while the executive has only a negative power, by the
constitutional exercise of which he may defeat the
will of the majority of both houses of the Legislature;
but this power has no effect when, upon his veto, two-
thirds of the members present in each house declare
that a bill shall become a law.'

"Applying the rules above laid down, we find
the Governor has power to disapprove any bill pass-
ed by both houses of the Legislature, and that, when
he disapproves any bill, the same shall not become
a law, unless reconsidered and approved by two-thirds
of the members of both houses. If the Legislature has
adjourned at the time the Governor disapproves any
bill, the same fails to become a law. If a bill passed
by the Legislature contains several items of appropria-
tion, the Governor is authorized to object to one or
more of such items, and such item or items so object-
ed to shall not become a part of the law, unless the
Legislature be in session and such item or items ob-
jected to be reconsidered and approved by two-thirds
of the members of both houses. The executive veto
power is to be found alone in section 14, art. 4, of the
Constitution of this state. By that section he is au-

Hon. Allan Shivers, Page 8, V-1196

thorized to disapprove any bill in whole, or, if a bill contains several items of appropriation, he is authorized to object to one or more of such items. Nowhere in the Constitution is the authority given the Governor to approve in part and disapprove in part a bill. The only additional authority to disapproving a bill in whole is that given to object to an item or items, where a bill contains several items of appropriation. It follows conclusively that where the veto power is attempted to be exercised to object to a paragraph or portion of a bill other than an item or items, or to language qualifying an appropriation or directing the method of its uses, he exceeds the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or language qualifying an appropriation, or directing the method of its use, becomes noneffective. So that we are constrained to hold that that portion of the veto message contained in subdivision 3 of the statement of objections appended to the appropriation bill and filed in the office of the Secretary of State /dealing with the rider/ was unauthorized, and therefore noneffective, and the paragraph so attempted to be stricken out will remain as a part of the appropriation bill. While the paragraph may not harmonize with the appropriation for the Attorney General's department as modified by the veto message of the Governor, yet the language of this clause must in its application adjust itself to the changed condition of the appropriation to which it refers." (140 S.W. at 411-412.)

Concerning the authority of the Governor to veto the rider, Justice Ramsey said:

"Again, we all agree that what is called the 'guidance provision' in the bill, which fell in the range of the blue pencil, beginning 'For the guidance of the Attorney General,' and ending, 'nor shall any warrants be issued nor obligations incurred in excess of the amounts herein appropriated,' could not, unless the whole bill failed and

> was vetoed, suffer destruction at the Governor's
> hands. In other words, that that was legislation,
> and, if it should be held that his veto was effective
> to strike down any one of the amounts of $41,580,
> that it must be limited to that single item, and
> could have none other or different effect." (140
> S.W. at 422-423.)

Another leading case on the authority of the Governor to veto parts of an appropriation bill is Commonwealth v. Dodson, 176 Va. 281, 11 S.E.2d 120 (1940). Citing Fulmore v. Lane, supra, with approval, the Court reviewed some of the other cases on this question as follows:

> "First we are to determine the power given
> to the Governor by this excerpt from our Consti-
> tution, said section 76, which declares that 'the
> governor shall have the power to veto any particu-
> lar item or items of an appropriation bill, but the
> veto shall not affect the item or items to which he
> does not object.'

> "We are dealing with an appropriation bill.
> The Governor is given power to veto any item or
> items thereof, subject to this limitation noted:
> '* * * but the veto shall not affect the item or items
> to which he does not object.'

> ". . . .

> "If the Commonwealth were to determine
> to erect a library building and were to set apart
> a certain sum for structural steel, another for a
> heating plant, etc., and were finally to provide for
> a supervising architect at a stated salary, plainly
> the Governor could not by veto, dispense with the
> services of an architect, although the sum to be
> paid for his services might, in a limited sense,
> be regarded as an item. That term, as used in the
> Constitution, refers to something which may be tak-
> en out of a bill without affecting its other purposes
> or provisions. It is something which can be lifted
> bodily from it rather than cut out. No damage can

be done to the surrounding legislative tissue, nor
should any scar tissue result therefrom.

"What does 'item' mean? It has been defined
in Juan Bengzon v. Secretary of Justice & Insular
Auditor, 299 U.S. 410, 57 S. Ct. 252, 253, 81 L. Ed.
312, 313.

"The Philippine Retirement Gratuity Law
provided for the payment of a retirement gratuity
to certain officers of the insular government, in-
cluding justices of the peace, among whom was the
petitioner. This was to be paid out of any fund in
the insular treasury not otherwise appropriated.
That act was approved by the Governor-General,
who, however, vetoed this provision:

" 'The Justices of the Peace who must re-
linquish office during the year nineteen hundred and
thirty-three in accordance with the provisions of
Act numbered Thirty-eight hundred and ninety-nine,
shall also be entitled to the gratuities provided for
in this Act.'

"The Organic Act conferred upon the Governor-
General ordinary veto powers, but in it was this pro-
vision:

" 'The Governor General shall have the power
to veto any particular item or items of an appropria-
tion bill, but the veto shall not affect the item or items
to which he does not object.' 48 U.S.C.A. § 1052.

"The language of our Constitution, as we have
seen, is that the 'veto shall not affect the item or items
to which he does not object.' Indeed, one provision
seems to have been copied from the other.

"The court itself tells us what it had to decide:
'Did the bill which became Act 4051 constitute an ap-
propriation bill; and, if so, was section 7 /the section
vetoed/, within the meaning of the foregoing provision
of the Organic Act, an item of such bill?'

Hon. Allan Shivers, Page 11, V-1196

"The court said that it was not an appropriation bill. It also said:

" 'It follows conclusively that where the veto power is attempted to be exercised to object to a paragraph or portion of a bill other than an item or items, or to language qualifying an appropriation or directing the method of its uses, he exceeds the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or language qualifying an appropriation, or directing the method of its use, becomes non-effective.'

" . . . .

" '. . . section 7 is not an "item" within the meaning of section 19 of the Organic Act. An item of an appropriation bill obviously means an item which in itself is a specific appropriation of money, not some general provision of law which happens to be put into an appropriation bill. Provisions granting power to the executive to veto an item or items of an appropriation bill are to be found, in various forms of expression, in many of the state constitutions. Their object is to safeguard the public treasury against the pernicious effect of what is called "log-rolling"-- by which, in order to secure the requisite majority to carry necessary and proper items of appropriation, unnecessary or even indefensible items are sometimes included.'

"In support of its conclusions it cites with approval State v. Holder, 76 Miss. 158, 180, 181, 23 So. 643, 644, and calls attention to the fact that the Constitution of Mississippi gave to the Governor power to veto parts of any appropriation bill. 'Parts' is a word capable of wider application than 'item' or 'items,' yet it did not give to the Governor power to veto an objectionable provision. In that case, the Mississippi Legislature made an appropriation for the Industrial Institute & College, setting apart certain sums for certain appropriate purposes but declared that payments to officers and employees should not be available unless the power of approval should be

**282**

conferred upon the president by the board of trustees. This provision, as to the president, the Governor vetoed.  <u>The court said that he had no power to transform a contingent or conditional appropriation into an absolute one and that the power given 'was not designed to enable the governor to veto objectional legislation in appropriation bills,' and that this power applied to parts so separable and complete within themselves that they may be taken from the bill without affecting others.</u>

"The Bengzon case, though late (decided January 4, 1937), is now leading.  It is a decision of all the justices who sat.  Mr. Justice Stone did not participate. As reported in 81 Law Edition, there was called to its attention many or most of the cases which had considered the issues then presented.

"It is contended that much that was said in the Bengzon case was but dicta, since the bill itself was not an appropriation bill; and the same criticism is directed to State v. Holder, supra.  It may readily be conceded that the bill presented to the Governor-General was not an appropriation bill and that the court with propriety might have stopped when that was ascertained, but it did not, and it tells us in terms what was before it.  Of this, it was the best judge.

". . . .

"Even if it be dicta, Mr. Justice Sutherland has told us what the Supreme Court thought, and that was that the veto was unauthorized because the bill was not an appropriation bill and because that stricken out was not an item.

"In re Opinion of the Justices, 294 Mass. 616, 2 N.E.2d 789, 790, Courts 208, States 131, Statutes 33, the court was asked to construe this constitutional provision, Const. amend. art. 63, § 5: 'The governor may disapprove or reduce items or parts of items in any bill appropriating money.'  It said that 'items' or 'parts of items' referred to separate fiscal units and that no power was given to change the terms of

an appropriation except by reducing the amount thereof; that a condition attached to an appropriation was not an item and that 'words or phrases are not "items or parts of items."'" (11 S.E.2d at 124-126.)

The Court then said:

"We think it is plain that the veto power does not carry with it power to strike out conditions or restrictions. That would be legislation. Plainly, money devoted to one purpose can not be used for another, and it is equally plain that power to impose conditions before it can become available is legislation.

"An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose. It is something different from a provision or condition, and where conditions are attached, they must be observed; where none are attached, none may be added." (11 S.E.2d at 127.)

In Fairfield v. Foster, 25 Ariz. 146, 214 Pac. 319, 322 (1923), the Court approved the holding in Fulmore v. Lane, supra, and in regard to the question here presented said:

"Now it is very true, as stated in State v. Holder, 76 Miss. 158, 23 South. 643, that the executive cannot veto a condition or proviso of an appropriation, while allowing the appropriation itself to stand. That would be affirmative legislation without even the concurrence of the Legislature. . . ."

In Bengzon v. Secretary of Justice, 299 U.S. 410 (1937), discussed in Commonwealth v. Dodson, supra, Fulmore v. Lane, supra, is cited and quoted with approval.

In 59 C.J. 583, Statutes, Sec. 114, the following is said:

". . . The disapproval of matter which is incidental to the appropriation and an inseparable part of

284

an item is without effect, as where an attempt
is made to veto a condition of an appropriation
and approve the appropriation without the con-
dition imposed."

See also, Annotation, 35 A.L.R. 600; Annotation, 99
A.L.R. 1277; 42 Am. Jur. 753-754, Public Funds, Sec. 51; Att'y
Gen. Op. 0-3685 (1941).

For an interesting discussion of the history of the
veto power and of the cases dealing with the power of the exe-
cutive to split an item of an appropriation bill, see 4 Tex. Law
Rev. 182 (1926).

From the above cases and authorities, the following
conclusions may be drawn with respect to the authority of the
Governor to veto a rider in an appropriation bill:

a. The Governor has the power to veto only
"items" of an appropriation bill.

b. An "item" is a specific appropriation of
money and does not include general provisions,
conditions, limitations, and restrictions put into an
appropriation bill in the form of riders.

c. The Governor has no authority to veto
a rider in an appropriation bill unless it is in it-
self an "item," that is, a provision containing a
specific appropriation of money.

d. A veto by the Governor of any provisions
of an appropriation bill which are incidental to the
appropriation and an inseparable part of an item is
beyond the constitutional authority delegated to him
in Article IV, Sec. 14, Constitution of Texas, and is
therefore ineffectual.

By your second question you ask if each of the riders
contained in House Bill 426 is constitutional or authorized by
statute. You then ask as to each rider our advice for the guid-
ance of the departments and agencies concerned. Due to the
limited time we have had in which to study the questions present-
ed by you, and due to the fact that you must act on House Bill 426

on or before June 28, 1951, it is impossible to pass upon the constitutionality of the 235 riders contained in the bill or give our interpretation of the same. Since, in answer to your first question, we have concluded that the Governor has no authority to veto non-appropriating riders in the general appropriation bill, it would appear that answers to your second and third questions are not necessary at of this time -- that is, within the time in which you must act on House Bill 426.

We trust that you will understand and appreciate the position in which we find ourselves with respect to your second and third questions. They actually constitute 470 separate questions, each of which will require study and conclusions which could not possibly be completed within the time allowed.

## SUMMARY

The Governor has the power to veto only "items" of an appropriation bill. An "item" is a specific appropriation of money and does not include general provisions, conditions, limitations, and restrictions put into an appropriation bill in the form of riders. The Governor has no authority to veto a rider in an appropriation bill unless it is in itself an "item," that is, a provision containing a specific appropriation of money. A veto by the Governor of any provisions of an appropriation bill which are incidental to the appropriation and an inseparable part of an "item" is beyond the constitutional authority delegated to him in Article IV, Sec. 14, Constitution of Texas.

Yours very truly,

PRICE DANIEL
Attorney General

E. Jacobson

Jesse P. Luton, Jr.
Assistants

APPROVED:

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

EJ/JPL/mf