[Civil No. 2150. Filed April 14, 1923.]

[214 Pac. 319.]

CHARLES W. FAIRFIELD, as Auditor of the State of Arizona, Appellant, v. JAMES H. FOSTER, Appellee.

1. APPEAL AND ERROR—STIPULATION AS TO WHAT ISSUES ARE NOT BINDING ON SUPREME COURT.—A stipulation as to what the issues are is not binding on the Supreme Court.

2. COURTS—QUESTION INVOLVING LIMITATION OF GOVERNOR'S VETO POWER CONSIDERED AS MATTER OF FIRST IMPRESSION.—A question involving delimitation of the Governor's veto power, being extremely important to the state, considered as a matter of first impression, notwithstanding partial consideration thereof in an earlier case.

3. STATUTES—GOVERNOR'S VETO POWER MAY BE EXERCISED ONLY AS PROVIDED BY CONSTITUTION.—The Governor's veto power, which was originally based on a similar power exercised by the English sovereign, is essentially legislative, though negative only and exercised by an officer whose functions are principally executive, but may be exercised only in the cases and the manner provided by Constitution, article 5, section 7.

4. CONSTITUTIONAL LAW—STATUTES—WHERE LANGUAGE IS AMBIGUOUS, COURTS MAY CONSIDER CONSTRUCTION BY CO-ORDINATE BRANCHES OF GOVERNMENT AND EVIL SOUGHT TO BE REMEDIED.—The courts cannot go outside the plain, unambiguous language of a statute or Constitution to determine its meaning, but, where the language is ambiguous, particularly in the case of constitutional provisions, wherein broad subjects must be covered with few words, they may consider the meaning previously given it by co-ordinate branches of the government and the evil it was intended to remedy.

5. CONSTITUTIONAL LAW — LEGISLATIVE CONSTRUCTION AS LIMITING GOVERNOR'S VETO POWER IS OF NO WEIGHT.—The legislative construction of a Constitution, while sometimes given weight, particularly if acquiesced in for many years, is of no weight where it involves limitation of the constitutional control of a co-ordinate branch of the government over the legislature, as in the case of limitation of the governor's veto power.

6. EVIDENCE—PURPOSE OF CONSTITUTIONAL PROVISION ENABLING GOVERNOR TO VETO ITEMS IN APPROPRIATION BILLS MATTER OF COM-

See 4 C. J., p. 173; 12 C. J., pp. 700, 712, 715; 15 C. J., p. 945; 23 C. J., p. 128; 36 Cyc. 962, 1110, 1140.

MON NOTORIETY.—It is a matter of common notoriety that the purpose of Constitution, article 5, section 7, authorizing the Governor to veto separate items of appropriation bills was to. permit him to object to expenditure of money for a specified purpose and amount, without having to refuse to agree to another expenditure approved by him.

7. STATUTES—EXECUTIVE CANNOT VETO CONDITION OR PROVISO OF APPROPRIATION AND ALLOW THE APPROPRIATION TO STAND. — The executive cannot veto a condition or proviso of an appropriation, while allowing the appropriation itself to stand.

8. STATUTES—APPROPRIATION FOR RATE CLERK OUT OF AMOUNT APPROPRIATED FOR CORPORATION COMMISSION HELD SEPARATE ITEM SUBJECT TO VETO BY GOVERNOR WITHOUT AFFECTING OTHERS.—The provision of Laws of 1922 (Sp. Sess.), chapter 42, section 1, subdivision 5, appropriating $2,100 per annum for a rate clerk out of a sum appropriated by such subdivision for salaries and wages as part of the appropriation for the Corporation Commission, *held* not merely a direction as to how certain moneys were to be expended, but a particular item, which the Governor, under Constitution, article 5, section 7, could veto without affecting other items.

9. STATUTES—GOVERNOR MAY NOT ALTER AMOUNT OF SPECIFIC APPROPRIATION, BUT MAY VETO ITEM APPROPRIATING SPECIFIC SUM FOR SPECIFIED PURPOSE ONLY.—While the Governor may not alter the amount of a specific appropriation, a specified sum which the legislature provides shall be spent for a specified purpose only is an item which may be disapproved by the Governor without affecting other items.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Frank H. Lyman, Judge. Judgment reversed, with orders to dismiss action.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch and Mr. Earl Anderson, Assistant Attorneys General, for Appellant.

Messrs. Baker & Whitney, for Appellee.

LOCKWOOD, Superior Judge.—This is a proceeding in *mandamus,* commenced in the superior court of Maricopa county, praying that the state auditor be required to audit, allow and draw a certain warrant on the state treasury.

Plaintiff claims that his demand was made under the authority of subdivision 5, section 1, chapter 42, of the Session Laws of the Fifth Legislature of the State of Arizona, Special Session of 1922. Defendant answers, setting up that the particular provision of said chapter 42 relied on by plaintiff was vetoed by the Governor.

The record was brought to this court on a stipulation of fact, and it was agreed in said stipulation:

"That the only issue in this case is whether the Governor legally vetoed a part of subdivision 5 of section 1, chapter 42, Session Laws of the Fifth Legislature of the State of Arizona. The appropriation bill and the attempted veto of a part of the same was filed in the office of the secretary of state of the state of Arizona in due time, and are fully set out in pages 268–296 of said Session Laws."

While, of course, a stipulation of this kind cannot bind this court as to what the legal issues found in the record really are, yet there is no doubt that in this case it correctly states them.

The action is one of extreme importance to the state, involving, as it does, a delimitation of the veto power of the Governor. For this reason we have determined to consider it as though a matter of first impression in this jurisdiction, and review the case of *Callaghan* v. *Boyce,* 17 Ariz. 433, 153 Pac. 773, where the question presented herein was partially considered.

In order that we may do this properly, it is necessary that we first analyze the veto power and determine its nature. As is well known, our forefathers adopted most of their political institutions from England, adapting them to the changed circumstances under which they found themselves, and it is a notorious fact that the veto power granted the chief executives by the federal and various state Consti-

tutions was originally based on a similar power exercised by the English sovereign.

Now this power, though exercised by an officer whose functions were principally executive, was essentially legislative in its nature. 1 Blackstone, Com. 361. And it has never been seriously questioned that the veto power of our Governors was of the same kind, though negative only in character. Blackstone, Constitutional Law, § 67; Cooley, Constitutional Law, 2d ed., 49; *Stuart* v. *Chapman,* 104 Me. 17, 70 Atl. 1069; *State* v. *Deal,* 24 Fla. 293, 12 Am. St. Rep. 204, 4 South. 899; *State* v. *Junkin,* 79 Neb. 532, 113 N. W. 256. Under our system of government in Arizona, it is as necessary that the Governor act on a law as that the legislature itself do so. Even though a bill carry unanimously in both houses, it must still go to the Governor for his approval or disapproval, and, in case of the latter, must follow the constitutional course before it becomes a law.

But this power, conferred by a Constitution, must be exercised only in the cases and the manner provided by that Constitution, and in Arizona it is governed by the provisions of section 7, article 5, of our fundamental law.

Examination of this section discloses that two kinds of veto are bestowed on our Governor. The first is the original, historic method, where he either approves or rejects the bill as a whole. This, of course, is simple, and requires no other explanation than that set forth in the Constitution itself. But in the last paragraph of the section is contained the special veto power under consideration here. It is as follows:

"If any bill presented to the Governor contains several items of appropriations of money, he may object to one or more of such items while approving other portions of the bill. In such case he shall

append to the bill at the time of signing it, a statement of the item or items which he declines to approve, together with his reasons therefor, and such item or items shall not take effect unless passed over the Governor's objections as in this section provided.''

It is obvious that the construction of this paragraph depends on the meaning given to the words ''several items of appropriations of money.''

Provisions of this general character, practically unknown in our various state Constitutions until near the time of the Civil War, are now found in almost every state in one form or another, and the different Governors have exercised the rights given thereunder freely. In spite of this fact, there are but few decisions on such constitutional provisions, and among these we find considerable difference, both in reasoning and conclusions. Attempts are generally made to base the decision on the precise language of the particular Constitution construed, but a careful examination of the reasoning in each case will disclose that the conclusion is really based on the view the particular court takes as to the general nature of the veto power and the purpose to be accomplished by the special constitutional provision.

These divergent views may be divided into three general classes:

First, where it is held that the Governor, acting in his legislative capacity, may lower, though he may not raise, the amount of a particular appropriation, as well as strike out the items entirely. *Commonwealth ex rel. Elkin* v. *Barnett,* 199 Pa. 161, 55 L. R. A. 882, 48 Atl. 976.

Second, where it is claimed that, though he must either approve or reject any amount mentioned as a whole, yet, when the legislature sets aside a

named amount to a named purpose, even though it be included within a general amount and purpose also, each detailed amount is an "item" and subject to a special veto. *People* v. *Brady,* 277 Ill. 124, 115 N. E. 204; *State* v. *Jones,* 99 S. C. 89, 82 S. E. 882; *Fulmore* v. *Lane,* 104 Tex. 499, 140 S. W. 405–421, 1082.

Third, where it is held that the word "item" applies only to a general subject of appropriation, which must be approved or rejected as a whole, and that the naming by the legislature of special objects and amounts of expenditure within the general purpose does not present "items" which the Governor can strike out separately. *Regents, etc.,* v. *Trapp,* 28 Okl. 83, 113 Pac. 910.

While it is true that courts cannot go outside of the plain, unambiguous language of a statute or Constitution to determine its meaning, yet when the highest courts of the different states disagree as to the interpretation of the same phrase, used in the same context, it seems to me it is a proper case for the application of the rule that, where the language is ambiguous, we may consider among other things, the meaning previously given it by co-ordinate branches of the government, and the evil it was intended to remedy.

Particularly is this true with constitutional provisions, for, since broad subjects must be covered therein with few words, it is impossible for their framers to state explicitly every detail or shade of meaning intended. 12 Corpus Juris, p. 700, and cases cited.

So far as construction placed on it by co-ordinate branches of the government is concerned, we can get but little light. Our Constitution has been in force for only eleven years, and it is probable any action taken by the Governor since 1915 has been based

on the decision in *Callaghan* v. *Boyce, supra.* It does not seem the argument of counsel that the State Financial Code defines what shall be considered an "item" needs much consideration. Laying aside the fact that this interpretation was immediately challenged by the executive branch of the government in the exercise of the veto power which is questioned in this very case, while it is true that legislative construction of a Constitution is sometimes given weight, particularly if that construction has been acquiesced in for many years, yet where it involves the limiting of the constitutional control of a co-ordinate branch of the government over the act of the very body which adopts the construction, I think the old rule of law that "no man should sit as judge in his own case" is very applicable.

We therefore should resort for our principal source of guidance to the apparent purpose of the framers of the Constitution, and here we can have but little doubt of the evil they foresaw, and how they desired to meet it. It is a matter of common notoriety that the reasons which placed this clause in our Constitution were the same as those which caused its insertion in every one which has a similar one—reasons which have been again exemplified in the last session of the Congress of the United States.

I cannot better illustrate them than by the language of the court in *Commonwealth ex rel. Elkin* v. *Barnett, supra:*

"The legislature, in framing and passing a bill, had full control over every subject . . . that it contained, and the Governor, as a co-ordinate branch of the law-making power, was entitled to at least a negative of the same extent. But by joining a number of different subjects in one bill the Governor was put under compulsion to accept some enactments that he could not approve, or to defeat the whole, including others that he thought desirable or even necessary."

We see this situation in every session of Congress. The annual "pork barrel" is presented to the President, and he is under the necessity of signing it without "dotting an i or crossing a t," or suspending the operations of a necessary department of the government.

Again, quoting from *Com. etc.* v. *Barnett, supra:*

"In ordinary bills the single subject is a unit which admits of approval or disapproval as a whole, without serious inconvenience, even though some of the details may not be acceptable. But every appropriation, though it be for a single purpose, necessarily presents two considerations almost equally material, namely, the subject and the amount. The subject may be approved on its merits, and yet the amount disapproved. . . . If the legislature, by putting purpose, subject, and amount inseparably together, and calling them an 'item,' can coerce the Governor to approve the whole or none, then the old evil is revived which this section was intended to destroy."

It cannot be questioned that the preceding quotations state the evil which our Constitution makers wished to prevent. In plain English, they wished the Governor to have the right to object to the expenditure of money for a specified purpose and amount, without being under the necessity of at the same time refusing to agree to another expenditure which met his entire approval.

Now it is very true, as stated in *State* v. *Holder,* 76 Miss. 158, 23 South. 643, that the executive cannot veto a condition or proviso of an appropriation, while allowing the appropriation itself to stand. That would be affirmative legislation without even the concurrence of the legislature. Certainly if, for example, the legislature appropriates, as it did once in Arizona, a certain sum for a girls' dormitory at the University, on condition that a like sum be raised by outside contributions, the Governor cannot

so use his veto as to make void the condition, while letting the appropriation stand, for the legislature might well have been willing to have spent a certain amount for the given purpose, if others would do likewise, but been utterly averse to the unconditional appropriation. And the veto power was then used in the only constitutional manner, on both proviso and appropriation.

But in the present case there was no attempt on the part of the Governor to imitate the action of the executive in *State* v. *Holder, supra.* The particular part of chapter 42, section 1, under which plaintiff claims reads as follows:

"Subdivision 5. For the Corporation Commission:
"For salaries and wages................... $53,880
"For the following positions not to exceed the annual rates herein specified:

\*    \*    \*    \*    \*    \*    \*    \*

"1 rate clerk.....................$2,100 per annum.

\*    \*    \*    \*    \*    \*    \*    \*    ''

The veto of the Governor is in this language:

"Bearing in mind the pressing need of economy in the administration of state government, it is my opinion that the following items, which I hereby disapprove, can be dispensed with without interfering with the efficiency of the departments for which they have been made:

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Subdivision 5. For the Corporation Commission:

\*    \*    \*    \*    \*    \*    \*    \*    ''

"1 rate clerk.....................$2,100 per annum.

\*    \*    \*    \*    \*    \*    \*    \*    ''

It is contended by plaintiff, however, that the only "item" which can be considered by the Governor is the whole subdivision "For the Corporation Commission" which amounts to $72,880, or, at the most, "For salaries and wages," which is $53,880, and that the positions and salaries specified are

merely a "direction" by the legislature as to how certain moneys are to be expended, but not an "appropriation" of a particular "item," and that the case of *Regents, etc.*, v. *Trapp, supra,* is in point.

While the decision in that case is specifically based on the holding that the bill in question was not one of the type which under the Oklahoma Constitution was subject to the special veto power, yet the reasoning set forth in that opinion as to what constitutes an "item" undoubtedly would uphold the construction of our Constitution maintained by plaintiff.

The act construed reads in part as follows:

"Section 1. There is hereby appropriated . . . the sum of two hundred eighty-five thousand, eight hundred ten and twenty-three hundredths dollars . . . for the support and maintenance of the State University. . . .

"Sec. 2. The appropriation for the State University at Norman shall be apportioned as follows:

| "Salary. | 1909–10. | 1910–11. |
|---|---|---|
| "President .................... | 4,000.00 | 4,000.00 |
| * * * * * * * * * | | |
| "Current expenses | | |
| "For printing ................ | 1,500.00 | 1,500.00 |
| * * * * * * * * * | | |
| "For rent ..................... | 1,000.00 | 1,000.00 |
| * * * * * * * * * * '' | | |

Laws Okl. 1909, c. 3, art. 26.

and so on down the list of some twenty-seven specific matters of necessary expense for the proper maintenance of the university.

The court says:

"The bill in the case at bar does not embrace distinct items of appropriations. It embraces a single item, with direction how that item shall be expended. . . . "

I am compelled to say that I can in nowise agree with such a construction. It is not in accord with

the ordinary definition of the word "item." The
International Dictionary gives "item" as a "separate
particular in an enumeration account or total."
See, also, *Lovell* v. *Drainage District,* 159 Ill. 188,
42 N. E. 600; *Baldwin* v. *Morgan,* 73 Miss. 276, 18
South. 919. The veto power in Texas is governed by
a constitutional provision very similar to ours, and
the dissenting opinion of Judge RAMSEY in *Fulmore*
v. *Lane, supra,* shows very clearly that in that juris-
diction, matters like the one under consideration
here are held to be "items."

But the conclusive argument to my mind against
the construction contended for by plaintiff is that
it renders utterly nugatory the attempt of the
constitutional convention to meet the very definite
evil above referred to. If we follow that line of
reasoning, the legislature may simply make a sepa-
rate appropriation in any lump sum for each depart-
ment, or, by proper language in the general ap-
propriation bill, consolidate the funds for almost the
entire state government, and, under guise of "direct-
ing" the expenditure of the money, limit its ap-
plication to matters and amounts which the Governor
believes to be highly injurious in part to the best
interests of the state, practically compelling him to
choose between abandoning the veto power, or sus-
pending the operations of the government, thus nulli-
fying the provisions of the Constitution under con-
sideration, and going back to the very conditions its
makers sought to avoid.

The form of the appropriation bill under con-
sideration, if we take the view of plaintiff, is a step
in that very direction. Like the bill in *Regents, etc.,*
v. *Trapp, supra,* it endeavors to make a lump appro-
priation for a certain department of the government,
and then to determine exactly to the last dollar just
how that money shall be spent; yet, according to

plaintiff, the Governor must either take the nauseous dose to the last drop, or stop the operation of the Corporation Commission for two years. If this construction be upheld, obviously the next step for a legislature hostile to a future Governor will be a further consolidation of the ''items'' of the appropriation bill, with a ''direction'' of how the money shall be spent, until the special veto is practically abolished.

I am decidedly of the opinion that the reasoning of the Trapp case, and any others like it, is utterly untenable on any theory of construction consonant with the plain purpose of the Constitution.

We do not wish to have it understood, by the fact that certain parts of the Barnett case are quoted, that we approve of the conclusion arrived at by the majority of the court in that case, to the effect that the Governor may *alter* the amount of a specific appropriation. Such may possibly be the law in Pennsylvania, under the Constitution of that· state, but it is not so in Arizona. On the contrary, we believe such a rule would transform the merely negative legislative power of the Governor into an affirmative one, and that it would be in consonance with neither the plain language of the Constitution nor the purpose of its makers.

But certainly, whenever the legislature goes to the extent of saying in any bill appropriating money that a specified sum of money raised by taxation shall be spent for a specified purpose, and that alone, while other sums mentioned in the bill are to be used otherwise, no matter what language it may be disguised under, it is, nevertheless, within both the spirit and letter of the Constitution, an ''item'' within the bill, and may be disapproved by the Governor without affecting any other items of appropriation contained therein.

The decision of the superior court of Maricopa county is reversed and the case remanded, with instructions to deny the writ and dismiss the action.

McALISTER, C.' J., and ROSS, J., concur.