Mr. A. N. Charnes Executive Director Office of State Planning and Budgeting 617 State Services Building Denver, Colorado 80203
Dear Mr. Charnes:
You have asked for my opinion concerning certain provisions of H.B. 1266, the "Long Bill," proposed in the Second Regular Session of the Fiftieth General Assembly.
You have posed a question concerning headnote section 1(12) of H.B. 1266, which reads as follows:
 The term "overhead reimbursement" means payments made to an agency of the state from federal funds or other nonstate funds to reimburse the state for the indirect expenses incurred by the state in operating sponsored programs. All overhead reimbursements generated from sponsored programs in higher education institutions are appropriated as cash funds for "education and general" expenditures.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents the following questions:
1. Is headnote section 1(12) of H.B. 1266 a "distinct item" subject to the governor's veto?
My conclusion is "yes."
2. Is the aforementioned headnote void, because it violates: (a) MacManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972), (b) separation of powers, and (c) section 2(f), page 7 of H.B. 1266?
 My conclusion is that the headnote in question, section 1(12) violates the holding in MacManus v. Love, supra. It is unnecessary to express an opinion as to (b) and (c).
3. Are (2)(1)(d) and (2)(1)(e) separate items for art. IV, § 12 purposes?
My conclusion is "no."
4. Do the "Ms" and "Cs" violate MacManus v. Love?
My conclusion is "no."
5. Does this provision violate MacManus v. Love by limiting the obtaining of federal grants to situations where indirect state contributions are not required?
My conclusion is "no."
ANALYSIS
Regarding question 1, the governor's power to veto appropriation bills is found in § 12, art. IV of the Colorado constitution.
 The governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be law, and the items or items disapproved shall be void . . . .
There is extensive judicial authority defining the word "item" in an appropriations bill. Commonwealth v. Dodson, 176 Va. 281,11 S.E.2d 120 (1940) defined "item" as follows:
 An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose. It is something different from a provision or condition, and where conditions are attached, they must be observed; where none are attached, none may be added.
Id. at 127. In People ex rel. State Board of Agriculture v. Brady, 277 Ill. 124, 115 N.E. 204 (1917), the court wrote:
 The word"item" is in common use and well understood separate entry in an account or a schedule, or a separate particular in an enumeration of a total which is separate and distinct from the other particulars or entries . . . .
Id. at 207. Perhaps the most complete treatment of the question is found in State v. Holder, 76 Miss. 158, 23 So. 643 (1898).
 Every bill of the character in question has three essential parts: The purpose of the bill, the sum appropriated for the purpose, and the conditions upon which the appropriation shall become available. Suppose a bill to create a reformatory for juvenile offenders, or to build the capitol, containing all necessary provisions as to purpose, amount of appropriation, and conditions may the governor approve and make law of the appropriation and veto and defeat the purpose or the conditions, or both, whereby the legislative will would be frustrated, unless the vetoed purposes or conditions were passed by a two-thirds vote of each house? This would be monstrous. The executive action alone would make that law which had never received the legislative assent. . . . If the governor may select, dissent, and dissever, where is the limit of his right? . . . May the governor transform a condition or a contingent appropriation into an absolute one in disregard and defiance of the legislative will? That would be the enactment of law by executive authority without the concurrence of the legislative will and in the face of it. The true meaning of section 73 is that an appropriation bill made up of several parts — that is, distinct appropriations, different, separable, each complete without the others, which may be taken from the bill without affecting the others, which may be separated into different parts complete in themselves — may be approved and become law in accordance with the legislative will, while others of like character may be disapproved and put before the legislature again, dissociated from the other appropriations. To allow a single bill, entire, inseparable, relating to one thing, containing several provisions, all complementary of each other and constituting one whole, to be picked to pieces and some of the pieces approved and others vetoed, is to divide the indivisible to make one of several to distort and pervert legislative action . . . .
Id. at 181-182.
Other cases supporting this definition of "item" include: Green v. Rawls, 122 So.2d 10 (Fla. 1960), (the two essentials which make an "item" are a specified purpose and the amount to be used therefor.); Bengzon v. Secretary of Justice, 299 U.S. 410 (1937); Black and White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381,218 P. 139 (1923); Fairfield v. Foster, 25 Ariz. 146, 214 P. 319
(1923); Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911); Caldwell v. Meskill, 164 Conn. 299, 320 A.2d 788 (1973); State ex rel. Cason v. Bond, 495 S.W.2d 385 (Mo. 1973); State ex rel. Sego v. Kirkpatrick, 86 N.M.2d 706 (Ia. 1975).
The headnote here in question contains the factors necessary to make it an item, and therefore subject to the governor's veto. The headnote contains a specific amount, i.e., money reimbursed to institutions by the federal government for overhead expenditures, and it contains a specified purpose to which the money is appropriated, i.e., "cash funds for `education and general' expenditures." The headnote is a self-contained, separable portion of the appropriations bill. As such it is an "item" as that term is used in art. IV, § 12 of the Colorado constitution.
Regarding question #2, MacManus v. Love, supra and Bedford v. People ex rel. Tiemann, 105 Colo. 312, 98 P.2d 474 (1939) held that federal contributions are not the subject of the appropriative power of the general assembly. The general assembly's appropriation of federal money was held to violate the separation of powers doctrine, MacManus, supra, at 222. Although the general assembly can make the amount of state monies available contingent on the amount of federal monies received, the general assembly is thus precluded from appropriating federal money.
The New Mexico case of State ex rel. Sego v. Kirkpatrick, supra, is directly in point. The legislature, as part of the appropriations bill, attempted to appropriate money received by institutions of higher education from the federal government. The Supreme Court first upheld the governor's use of the partial veto power in this instance.
 The item or part of House Bill 300 stands as a separate and distinct conditional and provisional appropriation or authorization to expend funds, and the veto thereof operated to delete or destroy it. The deletion or destruction of this item or part does not alter the effect of the remaining parts or items, except to the extent that striking or removing a part always effects a change in the whole.
Id. at 986. The court then found, citing MacManus, supra, that the legislature did not have the power to appropriate federal money:
 As already stated, our legislature clearly has the power, and perhaps the duty, in appropriating state monies to consider the availability of federal funds for certain purposes, but it has no power to appropriate and thereby endeavor to control the manner and the extent of the use or expenditure of federal funds made available to our institutions of higher learning. Control over the expenditure of these funds rests with the federal government and the boards of regents of the respective institutions.
Ibid.
Headnote sections (2)(1)(d) and (2)(1)(e) relate to the "M" and the "C" notations respectively. Both the "M" and the "C" have been adopted by the general assembly as a sort of shorthand. The "M" when placed to the right of a dollar amount denotes the maximum amount of general fund revenues available to match federal funds to use in certain programs. In the event that additional federal funds are available, the "M" amount is reduced by the amount of federal funds received in excess of the figure shown in the "federal funds" column for that program. If less federal funds are received than anticipated, the "M" amount is reduced proportionately. If state matching requirements are reduced, the combined general fund amount noted as "M" is reduced proportionately. For example, an item in the Long Bill could appear in the following manner.
APPROPRIATION FROM
General Fund Cash Funds Federal Funds
Data Processing $300,000 (M) $600,000
The legislature means by the "M" notation here that $300,000 is the maximum amount available for this project. There are several contingencies that would require less than $300,000 however. If federal funds were reduced to $400,000 the state contribution would correspondingly be reduced by 1/3 to $200,000. If federal funds were increased to $800,000, the state contribution would be reduced to $100,000.
Regarding question #3, as used in H.B. 1266, the "M" and the "C" notations ((2)(1)(d) and (2)(1)(e) respectively) are not separate items for veto purposes. The "M" and the "C" are conditions attached to specific appropriations and they cannot be vetoed separately.
The landmark case of State v. Holder, 76 Miss. 158, 23 So. 643
(1898) dealt with the constitutionality of the veto of part of the purpose clause of an appropriation bill, but not the appropriation itself. The court held that such a veto was impermissible because the executive power in this area was destructive and not creative. Therefore, the governor was not allowed to veto contingent or precatory language.
The decision in Holder was followed in Commonwealth v. Dodson,176 Va. 281, 11 S.E.2d 120 (1940), where the court considered the action of the governor in vetoing several purpose or condition clauses in an appropriation bill.
 We think it is plain that the veto power does not carry with it power to strike out conditions or restrictions. That would be legislation. Plainly, money devoted to one purpose can not be used for another, and it is equally plain that power to impose conditions before it can become available is legislation.
Id. at 127. Two recent cases support the proposition that the power to veto "items" does not give the governor power to strike qualifying language attached to an appropriation while letting the appropriation stand. In State ex rel. Cason v. Bond,495 S.W.2d 385 (Mo. 1973), the court held that the governor's veto of words and phrases in appropriation bills was impermissible.
 We hold that "item" as used in art. IV, § 26, refers to a separable sum of money appropriated. It does not refer separately to words, phrases or sentences which express purposes or conditions with reference to the appropriation made. Consequently, when the Governor struck words from sections 16.490, 16.495, 16.500, 16.515 and 16.520, leaving the appropriation itself standing, he exceeded the veto authority referred by Art. IV, § 26 of our Constitution.
Id. at 392. The New Mexico Supreme Court addressed the problem in State ex rel. Sego v. Kirkpatrick, supra. The disputed clause reads as follows:
 In addition to the above appropriation, there is appropriated the sum of $150,000 from the general fund for the purpose of saving harmless the state planning office from loss of federal funds available for continuing the present operations of the office. [This contingent appropriation shall be disbursed only upon certification in writing by the state planning officer, approved by the director of the department of finance and administration that federal funds to continue the agency's operation are not available; provided, however, that no funds shall be disbursed from this appropriation which would allow an operating budget greater than $1,037,600.]*
Id. at 981. (The lined portions were vetoed by the Governor.) The court ruled that the governor's veto of the above clause was constitutionally impermissible. It held that the legislature has the power to affix conditions upon appropriations and the expenditures thereof. The governor may not defeat or frustrate the legislative purpose by a veto of proper legislative conditions and permit the appropriation to stand. Such an action would be creating new law, and such legislative power rests solely with the legislature.
Other cases which support the conclusion that the "M" and the "C" are not distinct items include: In re Opinion of the Justices,294 Mass. 616, 2 N.E.2d 789 (1936); Green v. Rawls, 122 So.2d 10
(Fla. 1960); Black and White Taxicab Co. v. Standard Oil Co.,25 Ariz. 38, 218 P. 139, 25 Ariz. 38 (1923); Fairfield v. Foster,25 Ariz. 146, 214 P. 319 (1923); Caldwell v. Meskill, 164 Conn. 299,320 A.2d 788 (1973); Fulmore v. Lane, 104 Tex. 499, 511-512,140 S.W. 405, 412 (1911).
Regarding question #4, MacManus v. Love, supra involved an attempt by the Colorado legislature to appropriate federal money without appropriating state money. The Colorado Supreme Court held this to be a violation of the separation of powers doctrine. The "M" and "C" notations present a different factual situation. State money is being appropriated; the amount of state money is conditional upon the amount of federal money to be received. In dicta the MacManus court stated:
 (T)he General Assembly has plenary or absolute power over appropriations, and . . . it may attach conditions upon the expenditure thereof. It follows that the General Assembly can appropriate state moneys conditioned upon the receipt of matching federal moneys.
 In contrast, there is not here involved any appropriation of state funds. Rather, section 2(d) is an attempt to limit the executive branch in its administration of federal funds to be received by it directly from agencies of the federal government and unconnected with any state appropriations.
179 Colo. at 221. An earlier Colorado Supreme Court case Bedford v. People ex rel. Tiemann, 105 Colo. 312, 98 P.2d 474 (1939) also supports the conclusion herein. In Bedford, supra the general assembly had appropriated as follows:
PERSONAL SERVICE
1937-1938 1938-1939 Biennium
Director $3,600.00 $3,600.00 $7,200.00
(less any amount received from the federal government or agencies, it being the intention that the total salary of said director shall not exceed $4000.00 per year).
The director attacked the parenthetical phrase, strikingly similar to the "M" notation, as a violation of separation of powers. After defining the parenthetical phrase as "a single condition attached to an appropriation which may reduce but cannot increase the sum," the court disposed of the separation of powers argument:
 Nor is this clause, as argued in the brief before us, an attempt "to circumvent the powers of the board in the expenditure of federal funds." There is not the slightest hint therein of such an attempt. So far as Colorado is concerned the board may pay this director $10,000 per year. She simply says to the board, "Go the limit, but when you pass $4000 this appropriation goes down as you go up."
Id. at 315-16. The validity of the "M" notation was also upheld in Attorney General Opinion 73-0033, dated September 28, 1973.
In conclusion, the general assembly has the power to appropriate state funds conditioned upon the receipt of federal funds.
Headnotes section (2)(1)(f) reads as follows:
 The legislative intent on the expenditure of federal funds is not to be interpreted as a restriction on the prerogative of the executive department to pursue and obtain worthwhile nonstate funded programs on grounds where no direct or indirect state contribution is requiring and to expend such funds. The general assembly accepts no obligations directly or indirectly for support on continuation of such programs.
Regarding question #5, MacManus v. Love, supra, did not address the question you are posing, and there is therefore no violation of that holding by the "indirect state contribution" language.
The provision quoted above is a gratuitous non-binding statement. However, if it were considered a restriction, the inclusion of this language may violate art. V, § 32 of the Colorado constitution which prohibits the inclusion of general legislation in an appropriations bill. See Burciaga v. Shea, 530 P.2d 508
(Colo. 1974). Additionally, the provisions could be vetoed.
Section (2)(1)(f) plainly is not tied to any appropriation, but is a broad and vague statement of legislative desire. In State ex rel. Turner v. Iowa Highway Comm'n, 186 N.W.2d 141 (Ia. 1971), the Iowa Supreme Court found a statement not tied to an appropriation to be severable. The court upheld the governor's veto of such a provision under the Iowa statute allowing the governor to veto "part" of an appropriations bill.
SUMMARY
The headnote in the Long Appropriations Bill is subject to the Governor's item veto power. Headnote 1(12) held to violate MacManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972). "M" and "C" notations are not separate items and do not violate MacManus v. Love. Headnote (2)(1)(f) may violate Colo. Const. art. V, § 32.
Very truly yours,
 J.D. MacFARLANE Attorney General
LEGISLATIVE BILLS APPROPRIATIONS
H.B. 1266 (1976)
Colo. Const. art. IV, § 12
Colo. Const. art. V, § 32
PLANNING BUDGETING DEPT. Administration EXECUTIVE BRANCH Governor, Office of
Headnote in the Long Appropriations Bill is subject to the Governor's item veto power. Headnote 1(12) held to violate MacManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972). "M" and "C" notations are not separate items and do not violate MacManus v. Love. Headnote (2)(1)(f) may violate Colo. Const. art. V, § 32.
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]